# United States Court of Federal Claims

No. 18-1254
Filed: December 20, 2018

|  |  |
|---|---|
| RONALD R. KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

***SMITH*, Senior Judge**

On August 20, 2018, Plaintiff Ronald R. Kelly ("Mr. Kelly"), proceeding *pro se*, submitted his Complaint to this Court seeking the amendment of his military records "to reflect a General Discharge." Complaint (hereinafter "Compl.") at 2. Plaintiff seeks this status because "the military unknowingly contributed in part to [Mr. Kelly's] predisposed Native American . . . historically induced [post-traumatic stress disorder] that was the cause of [Mr. Kelly's] atypical behavior" which led to his discharge under, as he states, "Other Than Honorable Conditions." *Id.* The defendant filed its Motion to Dismiss on November 1, 2018, arguing that the statute of limitations bars Mr. Kelly's claims. For the reasons set forth below, the Court grants defendant's Motion.

## I.     Background

Plaintiff served in the United States Marine Corps from February 1968 through January 1970. *See* Plaintiff's Exhibit (hereinafter "Pl.'s Ex.") 1 at 12. Plaintiff completed initial recruit training without incident. Beginning in April 1968, however, Mr. Kelly was repeatedly absent without leave. *Id.* at 4. Plaintiff states that a recruiter promised that plaintiff would become a heavy equipment operator. *Id.* at 14. When plaintiff was instead assigned to administrative clerk school, he began taking unauthorized absences from duty. *Id.*

As a result, Mr. Kelly was convicted by a court martial of three unauthorized absences totaling 184 days, and, on April 8, 1969, plaintiff was sentenced to six months' hard labor. *Id.* at 14. On August 1, 1969, Plaintiff was released from confinement, and on August 22, 1969, the Navy Court of Military Review affirmed the sentence of the court martial. Pl.'s Ex. at 15. On January 19, 1970, plaintiff was given a "bad conduct discharge" from the United States Marine

Corps. *Id.* Since his discharge, Mr. Kelly has unsuccessfully petitioned the Department of the Navy's Board for Correction of Naval Records ("Board") on February 20, 1974 and on July 31, 1979 for his discharge status to be upgraded. *Id.* at 5. The Board further denied plaintiff's requests for reconsideration on July 28, 1983, and on February 11, 1992. *Id.*

In his Complaint, Mr. Kelly argues that his records should be amended to reflect an "General Discharge" due to his Native American ancestry. Compl. at 4. In support of his claim, plaintiff states, "no Native American, in the past and present, under any military circumstance, should receive anything less than a non-compensatory General Discharge" because the Navy has not implemented "decolonizing therapies." *Id.* at 2–3. Plaintiff posits that the "decolonizing solutions" that would have prevented his unauthorized absences included allowing Mr. Kelly to choose his own assignments. *Id.* at 3. Mr. Kelly faults the Navy for his unauthorized absences, highlighting the Navy's failure to realize that "there was a traumatically-embedded[] underlying[] reason why Plaintiff was insisting on the heavy equipment training," and that failing to allow him into that program constituted "further collective oppression of an Indian." *Id.* In his Complaint, plaintiff requests relief in the form of "a non-compensatory change in record to General Discharge under 10 U.S.C. § 1553." *Id.* at 1.

Plaintiff submitted his Complaint on August 20, 2018. The defendant filed its Motion to Dismiss on November 1, 2018, arguing that the statute of limitations bars Mr. Kelly's claims. *See generally* Motion to Dismiss. On November 14, 2018, Mr. Kelly filed his Response, acknowledging that the statute of limitations applies, but asserting that his claims were only discoverable within the last six years. *See generally* Plaintiff's Response to Motion to Dismiss (hereinafter "Pl.'s Resp."). On November 28, 2018, the government filed its Reply in support of its Motion to Dismiss. *See generally* Defendant's Reply. The motion is now fully briefed and ripe for review.

## II.    Standard of Review

This Court's jurisdictional grant is primarily defined by the Tucker Act, which provides this Court the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists. . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). If the Court lacks jurisdiction, it cannot proceed with the action and must dismiss the case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Pleadings from *pro se* plaintiffs are held to more lenient standards than

pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "This leniency, however, does not extend to saving a complaint that lies outside of this Court's jurisdiction. . . . *Pro se* or not, the plaintiff still has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims." *Conerly v. United States*, 137 Fed. Cl. 140, 142 (2018).

## III.     Discussion

In his Complaint, plaintiff fails to state a claim over which this Court has jurisdiction. Mr. Kelly appears to seek a writ of mandamus compelling the government to alter or amend his military records. However, writs of mandamus are a non-monetary form of relief that this Court lacks jurisdiction to issue. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus."). To the extent that plaintiff seeks judicial review of the Department of the Navy's Board for Correction of Naval Records' decision, this Court cannot review the case because it lacks jurisdiction under the Administrative Procedure Act ("APA") to order the non-monetary relief requested. *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) ("[T]he Court of Federal Claims lacks APA jurisdiction."); *Schmidt v. United States*, 3 Cl. Ct. 190, 194 (1983) (transferring a record correction case brought under 10 U.S.C. § 1553 because the Court of Federal Claims lacked jurisdiction to order APA, non-monetary relief).

Additionally, the date of Mr. Kelly's discharge precludes this Court from hearing his claim. Mr. Kelly's discharge was nearly fifty years ago, and, therefore, is beyond this Court's six-year statute of limitations. 28 U.S.C. § 2501. The Court of Federal Claims' statutorily-prescribed statute of limitations is jurisdictional in nature, and is not subject to equitable tolling. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008). Plaintiff's citations to the observations of a licensed clinical social worker in 2017 and to 2015 research concerning substance abuse in Native American communities do not "disclose[] the existence of a claim of which he was previously unaware." *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003). Instead, those items simply provide plaintiff with "additional ammunition with which to pursue the claim" of wrongful discharge. *Id.* Mr. Kelly knew of his discharge in 1970 and acknowledges that the statute of limitations has run on any claim that his discharge was wrongful. Pl.'s Resp. at 1. As such, the Court cannot adjudicate plaintiff's wrongful discharge claim.

## II.     Conclusion

For the reasons set forth above, defendant's MOTION to Dismiss is **GRANTED**, and this case is dismissed without prejudice under RCFC 12(b)(1), (h)(3). The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion.

**IT IS SO ORDERED.**

Loren A. Smith, Senior Judge